IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                            No. 10-cr-2734 JCH/SMV
                                                                   17-cv-0286 JCH

CASSLYN MAE WELCH,

    Defendant.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Casslyn Mae Welch's Amended Motion to Vacate, Set Aside, or Correct Sentence, filed April 11, 2017.[1] [Doc. 1752].[2] The United States responded on May 22, 2017. [Doc. 1754]. Welch did not file a reply, and the time for doing so has passed. The Honorable Judith C. Herrera, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 1750]. Having considered the briefing, relevant portions of the underlying criminal record, and relevant authorities, and being otherwise fully advised in the premises, I recommend that the motion be denied and that case number 17-cv-0286 JCH be dismissed with prejudice.

## Background

Welch was indicted on eleven counts relating to her participation in a carjacking and conspiracy that led to the killing of two people. [Docs. 24, 73, 83]. The charges rendered her

---

[1] Welch filed an initial motion under § 2255 on March 3, 2017. [Doc. 1749]. However, the motion did not state any claim or specify any ground for relief. *See id*. I entered an Order to Cure Deficiency on March 14, 2017, giving Welch the opportunity to submit a corrected motion. [Doc. 1751]. Welch then filed her amended motion [Doc. 1752], which is the subject of my findings and recommended disposition.
[2] Citations to document numbers refer to the docket in the criminal case, case number 10-cr-2734 JCH/SMV.

eligible for the death penalty. Welch agreed to cooperate with the investigation and testify against her co-defendant, John Charles McCluskey, "who, based on all accounts, was the mastermind, shooter, and the most culpable of all the defendants." [Doc. 1754] at 6. The government, in turn, submitted its recommendation to the Attorney General that it be authorized not to seek the death penalty against Welch; the government was so authorized. *Id.* at 7–8.

Subsequently, on January 20, 2012, a plea agreement was entered. [Doc. 259]. By the terms of the plea agreement, Welch agreed to plead guilty to nine counts, carrying a maximum sentence of life imprisonment. *Id.* at 2–4. The government agreed to move to dismiss the remaining two counts, refrain from bringing additional charges, and move for a reduction in Welch's United States Sentencing Guidelines ("Guidelines") base offense level. *Id.* at 6–7, 10. Welch's additional obligations as a cooperating defendant were specified in an addendum to the plea agreement. [Doc. 260]. She agreed to continue to provide information to the government as necessary and testify if called as a witness. *Id.* at 1–2. In the addendum, the government stated that it would consider moving for a downward departure from the applicable Guidelines sentencing range or statutory minimum, provided Welch continued to fulfill her obligations under the plea agreement and addendum. *Id.* at 2–3. Neither the agreement nor the addendum specified any particular sentence or range upon which the parties had agreed. Welch pleaded guilty at a change of plea hearing on January 20, 2012. *See* [Doc. 309].

Welch's sentencing hearing took place on June 2, 2014. *See* [Doc. 1688]. In the months preceding the sentencing hearing, counsel had communicated about what sentence Welch would propose to the Court and what position the government would take as to Welch's proposed sentence. *See* [Doc. 1726] at 3–5. At the sentencing hearing, Welch's counsel advocated for a

20-year sentence (to run concurrently with the 20-year sentence she had received in her related case in state court in Arizona). *See* [Doc. 1688] at 98–105. Welch's counsel was apparently under the impression that the government would not oppose the 20-year request. Counsel for the government, however, stated at the sentencing hearing that the government did "not concur" with the 20-year request and would not make any sentencing recommendation, instead leaving it to the discretion of the Court. Welch's counsel believed that this position was inconsistent with the government's earlier representations. After further argument, the Court agreed to allow briefing on the issue so that Welch could be fully heard. *See id.* at 106–126. The Court then sentenced Welch to a term of 40 years, or 480 months. *Id.* at 129.

Welch's counsel subsequently filed a motion alleging that the government breached the plea agreement by violating the implied covenant of good faith and fair dealing, based on the government's representation at the sentencing hearing that it did not concur in Welch's request for a 20-year prison term. [Docs. 1678, 1680]. The Court denied the motion on October 15, 2014 [Doc. 1726] and entered a judgment the following day [Doc. 1727]. Welch appealed to the Tenth Circuit on the issue of the alleged breach of the plea agreement. [Doc. 1733]. The Tenth Circuit rejected Welch's arguments and affirmed the District Court. [Doc. 1746]; *United States v. Welch*, 638 F. App'x 674 (10th Cir. 2015). The Supreme Court denied her petition for a writ of certiorari. [Doc. 1748]. The instant case is her first motion under § 2255.

Welch, proceeding pro se, now moves for relief pursuant to § 2255 on the basis of ineffective assistance of counsel. [Doc. 1752]. She contends that her attorneys did not properly advise her of the consequences of the plea agreement she entered. *Id.* at 5. She goes on to state, effectively, that her attorneys misled her into believing that if she signed the plea agreement and

3

cooperated with the prosecution, she would receive a sentence of 20 years. *Id.* at 15–16. Her attorneys, Welch contends, told her to "sign the plea and all will be good" and to give the government "whatever it wants" without "making waves." *Id.* In response, the government contends that Welch is simply arguing "a repackaged version of her appellate claim, which was rejected by the Tenth Circuit." [Doc. 1754] at 1. The government points to numerous discrete instances in which Welch made clear that she did not, in fact, believe that a 20-year sentence was a certainty in exchange for her cooperation. *Id.* at 8–13. And even if Welch's counsel were deficient, the government concludes, she fails to demonstrate that she was prejudiced by any alleged deficiency. *Id.* at 15–16.

## **Motions Under § 2255**

A petition under 28 U.S.C. § 2255(a) attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A litigant who appears pro se is entitled to a liberal construction of his allegations, though courts must apply the same legal standards applicable to filings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1999). However, courts are "not required to fashion [a pro se litigant's] arguments for him where his allegations are merely conclusory in nature and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). "[C]onclusory

4

allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110.

## Legal Standard for Ineffective Assistance of Counsel

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

466 U.S. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* Courts need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*,

58 F.3d 1447, 1459 (10th Cir. 1995)). In evaluating an attorney's performance, the court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994). Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id.* (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

In order to satisfy the second prong of *Strickland*, a defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

6

Defendants are entitled to effective assistance of counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). As with other ineffective assistance of counsel claims, the two-pronged *Strickland* test applies. Counsel's performance is deficient where counsel fails to advise the defendant of a formal plea offer or provides legally incorrect or unreasonable advice about whether to accept the plea offer. *See id.; Missouri v. Frye*, 566 U.S. 134, 145 (2012). To establish prejudice in the context of pleas, a defendant must "show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Moreover, due process requires that a defendant's plea of guilty be "voluntary and knowing." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). Otherwise, the plea of guilty is void. *Id.* "[T]he longstanding test for determining the validity of a guilty plea . . . is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Hill*, 474 U.S. at 56) (internal quotation marks omitted).

### **Analysis**[3]

Welch alleges she did not understand the consequences of her plea agreement. She claims her counsel misled her into believing that she would receive a 20-year sentence in exchange for pleading guilty and cooperating with the government in the case against her

---

[3] No evidentiary hearing is required in this case. An evidentiary hearing is required on a § 2255 motion where there are factual issues in dispute that, if proven, would entitle the defendant to relief. *United States v. Gallegos*, 459 F. App'x 714, 716–17 (10th Cir. 2012); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1362 (10th Cir. 1994). But district courts need not hold evidentiary hearings in collateral attacks "without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). No evidentiary hearing is required where the defendant's allegations are conclusory or contradicted by the record. *United States v. Sanchez*, 1997 WL 8842, at *3 (10th Cir. 1997); *see also United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (finding that evidentiary hearing was warranted because defendant's § 2255 petition was not "based on mere conclusory assertions that contradict earlier statements made under oath").

co-defendant. However, to the extent Welch's allegations would state a claim for ineffective assistance of counsel, they are contradicted by the record. Welch repeatedly affirmed her understanding that her plea agreement and cooperation with the government did not entitle her to any particular sentence. Further, even if her counsel's performance had been deficient, Welch fails to show how she was prejudiced. I find that Welch fails to satisfy either prong of the *Strickland* standard, and her motion should be denied. I consider each prong more fully below.

*Counsel's Performance*

Welch fails to demonstrate that her counsel misled her into believing that she would receive a 20-year sentence or that she otherwise was misinformed as to the consequences of her plea agreement. An attorney's "erroneous sentence estimation" does not constitute ineffective assistance of counsel. *United States v. Gordon*, 4 F.3d 1567, 1570–71 (10th Cir. 1993). Rather, in the plea context, a "reckless promise that a specific sentence will follow a guilty plea" may rise to the level of constitutionally deficient representation. *United States v. Gonzalez*, 98 F. App'x 825, 830 (10th Cir. 2004) (quoting *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970)). An attorney's misrepresentation "generally must consist of false promises or guarantees." *United States v. Gonzalez*, 209 F. App'x 842, 845 (10th Cir. 2006). In evaluating whether a defendant understood the terms and consequences of a plea agreement, courts look to the statements the defendant made concerning the plea agreement. While not "decisive," "[t]he procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea." *Tovar Mendoza*, 620 F.3d at 1269. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Id.* (quoting *Blackledge*, 431 U.S. at 74).

Welch's allegations concerning her plea are belied by the record. As an initial matter, the plea agreement set out, for each count to which Welch had agreed to plead guilty, the minimum and maximum penalties, several of which provided for a term of imprisonment up to and including life. *See* [Doc. 259] at 2–3. The agreement explicitly stated that the Court may reach an advisory guideline different than that expected by Defendant or may vary from the guideline range. *Id.* at 7. It provided that "the Defendant's final sentence is solely within the discretion of the Court." *Id.* at 8. It also noted that "[t]here have been no promises from anyone as to what sentence the Court will impose." *Id.* at 11.

At the change of plea hearing on January 20, 2012, the Court conducted a plea colloquy during which Welch confirmed that she had read, discussed with her attorneys, and understood the plea agreement before she had signed it. [Doc. 309] at 8–9. The Court verified that she understood the rights she would be giving up by pleading guilty. *Id.* at 9–10. The Court then discussed with Welch the sentencing consequences she would be facing by pleading guilty, as follows:

> THE COURT: [D]o you have any questions at all about the potential sentences that you could be facing?
> THE DEFENDANT: No, ma'am.
> THE COURT: All right. Do you have any questions at all about the sentencing section of the plea agreement?
> THE DEFENDANT: No, ma'am.
> . . . .
> THE COURT: Now, have your attorneys discussed with you the advisory Sentencing Guidelines that the Court is required to review prior to sentencing you in this case?

9

> THE DEFENDANT: Yes, ma'am.
> THE COURT: All right. . . . Let me ask you, assuming you plead guilty in this case, would your guilty plea in this case be the product of any promises other than the promises that have been reduced to writing, signed by the parties, and submitted to the Court?
> THE DEFENDANT: No. No, ma'am.
> THE COURT: Okay. Now, do you understand that the terms of the plea agreement are recommendations to the Court that the Court can reject, even though you would not be allowed, necessarily, to withdraw your guilty plea?
> THE DEFENDANT: I understand.
> THE COURT: Now, has anyone threatened or forced you to plead guilty?
> THE DEFENDANT: No, ma'am.
> THE COURT: Has anyone told you that if you do not plead guilty that further charges would be brought against you or other adverse action would be taken against you?
> THE DEFENDANT: No, ma'am.

*Id.* at 10–13. The Court went on to review the sentencing possibilities associated with each count. *Id.* at 16–19. The Court ultimately accepted Welch's guilty plea, finding that the plea was "free and voluntary" and that the defendant "fully understands the charges and the penalties." *Id.* at 23. The plea agreement and colloquy provide strong evidence that Welch understood the consequences of her guilty plea and did not believe that she would necessarily receive a 20-year sentence. *See, e.g.*, *United States v. Kutilek*, 260 F. App'x 139, 145 (10th Cir. 2008) (relying on plea colloquy to find that defendant's plea was knowing and voluntary).

As the government points out, there is additional evidence in this case that Welch understood that the 20-year sentence she hoped for was not guaranteed. In debriefs conducted with Welch as part of her ongoing cooperation in the case against her co-defendant, the

government verified that Welch understood this. The following exchange with an Assistant United States Attorney ("AUSA") occurred on July 18, 2012:

> AUSA FOURATT: What's your understanding of . . . . [w]ho decides your sentence?
> WELCH: The Judge.
> AUSA FOURATT: And your sentence—do you understand that your sentence is based on the Judge's assessment of the cooperation that you have given to the United States in this case?
> WELCH: Yes.

[Doc. 1699-7] at 3. In a subsequent debrief, on June 12, 2013, the following exchange occurred:

> AUSA FOURATT: [F]rom some things that . . . you've written, I . . . just feel an obligation to make sure that you completely understand the . . . sentencing exposure that you have, the potential sentencing exposure, okay? Now, I know the Judge went over this with you, but . . . let me just break it down for you. . . . [I]t is possible, theoretically possible, that you could receive a life sentence in this case and technically multiple life sentences. Okay? . . . That's still possible. Do you agree?
> WELCH: Yes.
> AUSA FOURATT: Okay. I—I know that your hope is for something less than that, but I just want you to acknowledge that that is possible. . . .
> WELCH: Yes, I—I acknowledge it, yes.

[Doc. 1699-8] at 2–3. Finally, when testifying at the trial of her co-defendant, Welch was asked on both direct examination and cross-examination about the terms of her plea agreement and her expectations regarding sentencing. Welch again confirmed that she understood that the Court was responsible for her ultimate sentence and that the maximum sentence she faced was life. [Doc. 1699-9] at 2. She stated that she had not been given any guarantees or promises about what her sentence would be. *Id.* at 2, 8.

It is true that Welch and her attorneys hoped—expected, even—that she would receive a sentence of 20 years. Welch apparently told certain relatives that she would be out of prison

11

within 20 years. *See id.* at 5–6. Her attorneys recommended a term of 20 years at her sentencing hearing and believed that the government had agreed to go along with that recommendation to the Court. But Welch confirmed at every turn that she understood the contours of her plea agreement and the sentencing possibilities she faced. She repeatedly acknowledged that her ultimate sentence was at the discretion of the Court and that she was facing a possible life sentence. Beyond the bare allegation asserted in her motion, Welch provides no evidence to suggest that her attorneys promised her that she would receive a 20-year sentence if she agreed to plead guilty. Anticipating or expecting a particular sentence is distinct from the "reckless promise of a specific sentence" that may signify deficient performance by counsel. *Gonzalez*, 98 F. App'x at 830; *see also United States v. Silva*, 430 F.3d 1096, 1099–1100 (10th Cir. 2005) (counsel's erroneous prediction that defendant's criminal history would not be used by the government to calculate his Guidelines sentencing range did not invalidate plea, particularly where plea agreement and colloquy showed he had been apprised of the maximum term he faced); *United States v. Landsaw*, 206 F. App'x 773, 776 (10th Cir. 2006) (no ineffective assistance where anticipated sentencing reduction was not applied and defendant received greater sentence than what the parties had agreed on in the plea agreement, given that defendant had been told repeatedly that the court could reject the parties' sentencing recommendation). Welch's conclusory allegations that she was misled cannot stand up to the consistent record evidence to the contrary. Welch bore the burden of showing that her counsel was deficient, and she has failed to meet this burden.

*Prejudice*

Even if her counsel's performance had been deficient, Welch fails to show that she was prejudiced by any such deficiency. To establish prejudice, Welch was required to show a reasonable probability that but for the alleged error, she would not have pleaded guilty and instead would have insisted on going to trial. *See Hill*, 474 U.S. at 58–59. She does not do so. She makes no assertion that, had she believed it was possible she might receive a sentence in excess of 20 years, she would have rejected the plea and proceeded to trial.

Moreover, even if she had, Welch was additionally required to show that her "decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). While a defendant need not establish that she would have prevailed at trial in order to show prejudice, her "prospects of succeeding inform [the court's] view of whether [she] would have gone to trial." *United States v. Triplett*, 263 F. App'x 688, 690 (10th Cir. 2008). The government noted the sweeping evidence against Welch, "which included DNA, fingerprints, ballistics, forensic autopsy, witness testimony, video surveillance footage, financial records[,] and her own confession." [Doc. 1754] at 16. Welch does not point to any defense she might have raised. Moreover, Welch faced a possible death sentence stemming from the charges against her. While the plea agreement did not include a specific sentencing recommendation, Welch's guilty plea did remove the possibility that she would receive the death penalty. The plea agreement called for the dismissal of some of the charges against her and a reduction in her offense level, as well as a possible government motion for a downward departure from the Guidelines. Welch does not carry her burden to identify facts showing that it would have been rational under the circumstances to reject the plea and proceed to trial.

*See, e.g.*, *United States v. Mooneyham*, 580 F. App'x 657, 659–60 (10th Cir. 2014) (finding no prejudice because no rational defendant would have rejected a plea of 20 years when facing a mandatory minimum of 25 years and statutory maximum of 40 years, given the strength of the evidence against the defendant).

## Conclusion

Welch has established neither deficient performance nor prejudice, and thus she fails to show ineffective assistance of counsel under *Strickland*. I recommend that her motion be denied and that her case be dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Defendant Casslyn Mae Welch's Amended Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1752] be **DENIED** and that case number 17-cv-0286 JCH be **DISMISSED with prejudice.**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**